IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RANDALL TODD ROYER )
 )
    Plaintiff, )
 )
v. ) 1:10-cv-0146 (LMB/IDD)
 )
FEDERAL BUREAU OF PRISONS )
 )
    Defendant. )

F I L E D
NOV 19 2010
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

MEMORANDUM OPINION

Before the Court is the defendant's Motion to Dismiss or for Summary Judgment [Dkt. No. 23]. For the reasons discussed below, the Court finds that venue is improper in the Eastern District of Virginia. Accordingly, the Court will not address the Motion to Dismiss but will transfer this civil action to the United States District Court for the District of Columbia.

I. Background

This is a civil action against the Federal Bureau of Prisons ("BOP"), an agency of the United States Department of Justice, located in the District of Columbia. The pro se plaintiff, Randall Todd Royer, also known as Ismail Royer, is a federal inmate in the custody of the BOP. On January 16, 2004, Royer pled guilty before this Court to one count of aiding and abetting the use and discharge of a firearm during and in relation to a crime of violence (conspiracy to violate the Neutrality Act), in violation of 18 U.S.C. §§ 924(c)(2) & 3238, and one count of aiding and abetting the carrying of an explosive during the commission of a

felony which may be prosecuted in a court of the United States, in violation of 18 U.S.C. §§ 844(h)(2) & 3238. Royer was sentenced to 240 months incarceration, among other penalties, and is currently confined at the Administrative Maximum Security Facility in Florence, Colorado.

The BOP has classified Royer as an offender with a history of, or nexus to, international terrorism and has accordingly designated him as a "terrorist inmate." Royer challenges his classification as a terrorist inmate, alleging that the classification was based upon erroneous records and has resulted in the imposition of harsh and atypical restrictions on his conditions of confinement relative to those of ordinary prisoners. Pl.'s Compl. ¶ 3. Specifically, Royer argues that his designation as a terrorist inmate was based upon inaccurate information originally contained in a draft version of a Pre-Sentence Report ("PSR") prepared by the Probation Office before his sentencing hearing. Id. ¶¶ 32-41. The draft PSR contained, <u>inter alia</u>, information drawn from the Statement of Facts that Royer had signed pursuant to his plea agreement, including his affirmation that during the 1992-1995 war in Bosnia and Herzegovina, he had fought on the side of the Bosnians against the Serbian army as part of the "Abu Zubair" unit. The draft PSR contained a further statement, in the last sentence of Paragraph 42, that "Abu Zubair (known more formally as Abu Zubair al Madani) was a member of Al Qaeda sent to Bosnia by [Osama] Bin Laden to establish camps for Al Qaeda." <u>See id.</u> at ¶ 33.

At Royer's sentencing hearing, his defense counsel orally objected to the last sentence of Paragraph 42 in the PSR, arguing that it incorrectly confused the Abu Zubair military unit in Bosnia, with which Royer was affiliated, with an individual with a similar name who had been a member of al Qaeda but had died several years before. The government acknowledged the error, and this Court ordered that the line be stricken from the final PSR. Accordingly, the Probation Office deleted the last sentence of Paragraph 42 from the PSR, and the final adopted version of the report, as completed and filed in the BOP's Inmate Central Records System, no longer contains that statement.

Royer does not challenge the accuracy of the final adopted version of his PSR in his Inmate Central File. See Pl.'s Compl. ¶ 25. Rather, he alleges that the BOP's Counter Terrorism Unit improperly gained access to the redacted line in the draft PSR containing the incorrect statement about Abu Zubair,[1] and that the

---

[1] In his Complaint, Royer initially alleged that an unknown federal agency gave a copy of the draft PSR to the BOP. However, on July 20, 2010, Royer filed a Motion to Dismiss Counts 3 and 5 and Defendant Unknown Federal Agency. In that motion, Royer clarified that in light of information he recently obtained, he now agrees that no unknown federal agency was involved in turning over a draft PSR to BOP officials. Rather, the inaccurate sentence in ¶ 42 of the draft PSR regarding Abu Zubair was included in an Addendum to one of the copies of Royer's PSR that the Counter Terrorism Unit of the BOP maintains in its electronic system of records. That Addendum lists objections filed by plaintiff to his draft PSR, including his objection to the erroneous statement that he was affiliated with an Al Qaeda operative named Abu Zubair in Bosnia. Accordingly, this Court dismissed Counts 3 and 5 and defendant Unknown Federal Agency by an order issued on September 28, 2010.

BOP then improperly used that information in classifying him as a terrorist inmate. See id. ¶¶ 32-41. Royer also alleges that the BOP has maintained inaccurate records derived from "open source reporting" that falsely suggest that he has been affiliated with al Qaeda. Id. ¶ 39. Finally, Royer alleges that the BOP has failed to provide him access to those records, to collect information directly from him to correct those records, or to respond to his requests that the records be amended to remove any erroneous information. See id. ¶¶ 42-44, 54-76.

Royer's Complaint, filed on January 19, 2010, includes eleven counts. Counts 1-9 claim violations of the Privacy Act and the Freedom of Information Act, 5 U.S.C. § 552 & 552a et seq., while Counts 10-11 are brought pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and allege violations of the First Amendment and the Fifth Amendment's Due Process Clause. Royer seeks monetary damages, as well as declaratory and injunctive relief, including an order that the BOP amend its records concerning Royer and give him access to those records, a declaration that the BOP is violating his due process and free speech and association rights, and an injunction prohibiting the BOP from enforcing its heightened conditions of confinement, such as the restriction on physical contact visits with family members, against him. Pl.'s Compl. at 35-36.

On May 13, 2010, defendant BOP filed a Motion to Dismiss or for Summary Judgment. Pursuant to Local Civil Rule 7(K), the BOP

sent plaintiff a Roseboro notice, advising him that he was entitled to file a response opposing defendants' motion, and Royer filed his response on July 14, 2010. Neither party addressed the matter of venue in their initial briefing. However, finding that further exploration of the issue would be helpful before ruling on the Motion, this Court entered an Order on September 28, 2010 directing the parties to address the issue of whether venue is proper in this District. Royer filed his supplemental memorandum concerning venue on October 18, 2010, and the BOP filed its response on October 27, 2010.[2]

## II. Discussion

Royer raises some very serious allegations in his Complaint. In fact, in light of arguments advanced by the BOP itself, it appears that the BOP may in fact be maintaining inaccurate information about Royer, in violation of this Court's oral order during Royer's sentencing hearing that Paragraph 42 of his Pre-Sentence Report be stricken as erroneous. Specifically, in its Motion to Dismiss or for Summary Judgment, the BOP continues to make reference to the fact that Royer fought with a Bosnian military unit known as "Abu Zubair," and improperly confuses that group with a now deceased al Qaeda operative by that same name.

---

[2] The Court's original September 28, 2010 order gave the parties fourteen days to respond. However, on October 25, 2010, the Court granted the BOP leave to file its supplemental memorandum regarding venue by close of business on October 28, 2010.

In its Motion to Dismiss or for Summary Judgment, the BOP first defends its classification of Royer as a "terrorist inmate" by citing the fact that his offense conduct included significant communication and association with Lashkar-e Tayyiba (LT) (Army of the Righteous), a group designated by the Department of State as a Foreign Terrorist Organization. See Mem. in Supp. of Def.'s Mot. to Dismiss or for Summ. J. at 3-4. However, the BOP then goes on to allege that the Abu Zubair group with which plaintiff trained and fought in Bosnia "is associated with al Qaeda," and that "publicly available records," such as those found in government web sites, media outlets, and educational sources, confirm that fact. Id. at 4. In particular, the BOP cites four web sites which it claims contain publicly available records tying the Bosnian Abu Zubair group to terrorism. Id.

Several of those website links, however, such as the link to www.historycommons.org, are broken and no longer connect to valid web sites. Others, such as the links to a copy of an indictment returned by a grand jury in the Northern District of Illinois and a press release issued by the U.S. Attorney's Office in that same case, replicate the same confusion between the *group* Al Zubair and the *individual* by the same name that gave rise to Royer's original objection to his draft PSR.[3] Thus, whether the information

---

[3] The indictment, for example, alleges that the defendants in that case produced videotapes eulogizing "dead al Qaeda fighters," such as "Abu Zubair al Madani." That statement is a

6

regarding Abu Zubair was derived from the Addendum to Royer's PSR or from open source reporting, the BOP appears to be perpetuating the exact same error that the government already admitted to making during Royer's sentencing hearing. The government's demonstrated inability to learn from its own mistakes - mistakes to which it stipulated in a public hearing before this Court - is a matter of serious concern.

However, this Court's concerns alone are not enough to establish that Royer is entitled to relief on the merits of his claims, or even that this action can be heard by a court in this District. In fact, for the reasons explained below, venue is improper in the Eastern District of Virginia, and this action will therefore be transferred to the United States District Court for the District of Columbia.

A. Privacy Act Claims

Counts 1, 2, 4, and 6-9 of Royer's Complaint allege violations of the Privacy Act and the Freedom of Information Act ("FOIA").[4] Both of those statutes contain specific venue clauses, which are respectively codified at 5 U.S.C. § 552a(g)(5) and 5 U.S.C. § 552(a)(4)(B). The Privacy Act's venue provision states:

An action to enforce any liability created under this

---

clear reference to the *individual* by that name, not the group with which Royer has admitted his affiliation.

[4] Counts 3 and 5 also alleged violations of the Privacy Act, but those counts have been dismissed upon Royer's motion.

> section may be brought in the district court of the United States in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia.

5 U.S.C. § 552a(g)(5). Similarly, FOIA provides that venue is appropriate in:

> the district court of the United States in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia.

5 U.S.C. § 552(a)(4)(B).

In this case, Royer's Complaint alleges that venue is proper in this District because "plaintiff is resident and domiciled in the Eastern District of Virginia at 6166 Leesburg Pike in Falls Church, [Virginia]," where he resided before his arrest and subsequent incarceration. Pl.'s Compl. ¶ 6. Moreover, in his Supplemental Memorandum Concerning Venue, Royer cites a number of cases, the vast majority of which are from circuits other than the Fourth Circuit, which he claims establish that a prisoner is "deemed to reside in the district wherein he resided prior to his incarceration." Pl.'s Supp. Mem. Concerning Venue at 1.

Most of the authorities plaintiff cites, however, deal with the concepts of domicile and citizenship, not residence. In particular, the two cases Royer identifies from the Fourth Circuit, Price v. Carr-Price, 23 F.3d 402 (4th Cir. 1994) and Roberts v. Morchower, 956 F.2d 1163 (1992), both address the domicile of a prisoner for diversity jurisdiction purposes, not the separate and distinct matter of where a prisoner resides for purposes of

8

establishing venue under statutes like FOIA and the Privacy Act. As the Fourth Circuit observed in Commissioner of Internal Revenue v. Nubar:

> When these words, "domicile" and "residence," are technically used by persons skilled in legal semantics, their meanings are quite different. . . . "Residence" simply requires bodily presence as an inhabitant in a given place, while "domicile" requires bodily presence in that place and also an intention to make it one's domicile.

185 F.2d 584, 587 (4th Cir. 1950) (internal quotation marks and citations omitted); see also Black's Law Dictionary 501, 1310 (7th ed. 1999) (defining residence as "the act or fact of living in a given place for some time," while domicile is separately defined as "a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere").

Based upon the allegations in Royer's Complaint and the statements in his Supplemental Memorandum, Royer's *domicile* may well be in the Eastern District of Virginia. However, in light of the fact that he is presently serving a 20-year sentence and is confined in a federal facility in Colorado, Royer has failed to set forth sufficient information establishing that he *resides* in this District for FOIA and Privacy Act purposes. Although Royer correctly argues that some courts have found that prisoners reside in the district where they are domiciled for FOIA or Privacy Act venue purposes, the Fourth Circuit has never squarely addressed the matter. See United States v. Pugh, 69 Fed. Appx. 628, 2003 U.S.

9

App. LEXIS 14069, at *3 (4th Cir. 2003) (expressly declining to decide where an incarcerated inmate resides for purposes of FOIA's venue provision). Moreover, other courts, most notably the D.C. Circuit, have found that for purposes of venue, "a prisoner has his residence at his place of confinement." In re Pope, 580 F.2d 620, 622 (D.C. Cir. 1978).

Accordingly, Royer has failed to establish that venue over counts 1, 2, 4, and 6-9 of his Complaint is proper in the Eastern District of Virginia, and those counts will therefore be transferred to the United States District Court for the District of Columbia, pursuant to 5 U.S.C. § 552a(g)(5) and 5 U.S.C. § 552(a)(4)(B).

B. *Bivens* Claims

Counts 10 and 11 of Royer's Complaint are brought under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and allege violations of Royer's First and Fifth Amendment rights. As an initial matter, those constitutional claims may simply collapse into Royer's Privacy Act claims, at least insofar as they merely repeat the allegations that the BOP has maintained inaccurate records about Royer's affiliation with terrorist groups. See Wilson v. Libby, 535 F.3d 697, 707 (D.C. Cir. 2008) (declining to create a Bivens remedy for constitutional claims alleging damages from the improper disclosure of information covered by the Privacy Act); Chung v. U.S. Dep't of Justice, 333 F.3d 273, 274 (D.C. Cir. 2003) (same); Carter v. Fed. Bureau of

10

Prisons, 2007 WL 870120, at *14 (N.D. W. Va. March 20, 2007), aff'd, 251 Fed. Appx. 247 (4th Cir. 2007) (holding that special factors precluded the creation of a Bivens remedy for failure to maintain accurate records because that matter is "expressly addressed and regulated by the Privacy Act.").

Moreover, even if Counts 10 and 11 state separate, cognizable claims for relief based upon Royer's classification as a "terrorist inmate" and the severe restrictions on his conditions of confinement that flow from that classification, venue still does not lie in this District. Royer's Bivens claims are governed by the general venue statute, 28 U.S.C. § 1391(e), which states in relevant part:

> A civil action in which a defendant is an officer or employee of the United States . . . , or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which
>
> (1) a defendant in the action resides,
>
> (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) the plaintiff resides if no real property is involved in the action.

As explained above, Royer has failed to demonstrate that he resides in the Eastern District of Virginia for venue purposes. Accordingly, venue is appropriate only where the defendant resides, or where a substantial portion of the events giving rise to the cause of action occurred.

11

In this case, the primary action giving rise to Royer's <u>Bivens</u> claims was his designation as a terrorist inmate on the basis of records maintained by the BOP's Counter Terrorism Unit ("CTU"). The parties dispute where those records are located, with the BOP arguing that the CTU's records are part of the Inmate Central File system of records, which is typically located at the institution in which the prisoner is confined, while Royer alleges that the records are wholly separate from his Central File and are located either in Washington, D.C., or in Martinsburg, West Virginia. <u>Compare</u> Mem. in Supp. of Def.'s Mot. to Dismiss or for Summ. J. at 13 <u>with</u> Pl.'s Compl. ¶ 65. However, for the purposes of a motion to dismiss, this Court takes the plaintiff's factual allegations as true. For that reason, and for reasons of judicial economy, counts 10 and 11 of Royer's Complaint will also be transferred to the United States District Court for the District of Columbia.

### III. Conclusion

For the reasons stated above, this civil action will be transferred to the United States District Court for the District of Columbia by an Order to be issued with this Memorandum Opinion.[5]

Entered this 19th day of November, 2010.

/s/ _____
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

---

[5] Because the Court finds that venue is improper in the Eastern District of Virginia, the Court does not rule on the defendant's pending Motion to Dismiss or for Summary Judgment [Dkt. No. 23].

12